McAndrew Unemployment Compensation Case.

Argued March 7, 1955. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER, J., absent).

*John R. Lenahan,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY ERVIN, J., April 12, 1955:

sation Board of Review's denial of the appellant's
This is an appeal from the Unemployment Compen-
claim for unemployment compensation on the ground that her unemployment was "due to voluntarily leaving work without good cause" within the meaning of §402(b) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. 2897, §402, as amended by the Act of August 24, 1953, 43 PS §802(b).[1]

Claimant was employed as a hand presser on a piece rate basis at Paula Lee Frocks, Inc., Carbondale, Pennsylvania, for approximately eight years prior to March 26, 1954. Paula Lee Frocks, Inc. was engaged in the manufacture of infants' dresses. When lots of new style dresses were given to the hand pressers it was customary for the employer to set an initial piece rate per dozen dresses. This rate would remain in effect until experience determined the actual amount of time required to perform the pressing operation, whereupon the initial rate would then be adjusted accordingly. On March 26, 1954, the last day of her employment, shortly before 10:30 a.m. claimant was given a lot of dresses to press and was informed by the forelady that the employer had fixed the rate for this work at 20¢ per dozen, which was 2½¢ less than the rate which claimant last received and 2½¢ less than the rate which had prevailed since January 1, 1954. Claimant refused to press any of the garments for that price. Upon being informed of her refusal the plant manager

---

[1] This is a test case to determine the claims of Mary McAndrew and five fellow employes similarly situated.

instructed the forelady to take out dresses of a style previously pressed by claimant for which the rate had been established at 22½¢ per dozen. Claimant also refused to press this lot and left the employer's establishment.

The bureau ruled that claimant was not entitled to receive benefits under §402(b) of the Law because she had quit work of her own accord due to dissatisfaction with a slight reduction in wages, which could not be considered a good cause for leaving work under the Law; but the referee reversed this ruling and allowed benefits on the ground that claimant had good cause for quitting work under §402(b) because her employer had reduced her wages on two different occasions during the last three months of her employment, which amounted to a violation of her contract of hire and a decrease in her earnings of about 5¢ a dozen, or a possible reduction of approximately $2.00 per day. Paula Lee Frocks, Inc., the employer, appealed from this decision and the Board of Review reversed the referee's decision and denied benefits under §402(b). After reargument at the request of counsel for the claimant the board reaffirmed its decision denying benefits to claimant.

The relevant findings of the board are as follows:

"3. On their last day of work, the claimants were given a lot of dresses of a style which they had never pressed before, the initial rate being twenty cents per dozen. The claimants thought the initial rate was too low and refused to press the dresses. The initial rate was subject to later adjustment based on experience.

"4. After the claimant's aforesaid refusal, they were given a lot of dresses of a style which they had pressed on prior occasions, with no change in the prior rate. The claimants, without observing the style of this lot, again refused to press, and walked off the job."

The question before us is whether the findings of the board are supported by substantial competent evidence.

An order of the board denying unemployment compensation benefits is conclusive only when based upon findings supported by the evidence. *Sauers Unemployment Compensation Case,* 168 Pa. Superior Ct. 373, 77 A. 2d 891; *Kelleher Unemployment Compensation Case,* 175 Pa. Superior Ct. 261, 104 A. 2d 171. In the case before us the findings to the effect that claimant was given a lot of dresses of a style which she had never pressed before on which an initial rate of 20¢ per dozen had been established and that after her refusal to press this lot she was then given a lot which she had pressed before at the rate of 22½¢ per dozen are based solely on the testimony of the plant manager relating the instructions he gave the forelady. The plant manager did not distribute either the first or second lot of dresses to the hand pressers and had no conversation with them concerning either the piece rate or the style of the dresses. The distribution of the lots of dresses to the hand pressers and notification of the piece rate applicable thereto was the duty of the forelady but there is no evidence she correctly relayed the instructions of the plant manager to the claimant. The forelady was never called as a witness at either the hearing before the referee or the hearing held by the board. Moreover, a careful review of the record fails to disclose any evidence that claimant was aware the first lot of dresses she was given to press was a *new* style and that the rate of 20¢ per dozen was an *initial* rate subject to later adjustment. Nor is there any evidence to indicate claimant was advised the second lot of dresses carried the rate of 22½¢ per dozen. Claimant testified as follows, concerning the instructions of the forelady: "Q. When she gave you the second lot,

the $.22½ lot, did she give you a price? A. Never told us anything, that's the God's truth, she just flung them down." We conclude the evidence was insufficient to support the above findings of the board.

The plant manager also testified that the forelady told him "they refused to press the lot—not enough money, that we had cut the rate" and, in reference to the second lot, "She came back and told me they walked out, they didn't press it." This testimony of the plant manager was clearly hearsay and therefore incompetent. While it is true the board is not required to "conform to common law or statutory rules of evidence," Law, supra, §505, 43 PS §825; see *Glen Alden Coal Co. v. Unemployment Compensation Board of Review,* 168 Pa. Superior Ct. 534, 79 A. 2d 796, we are agreed that under all the circumstances here the testimony of the forelady is essential for a proper determination of whether or not the claimant terminated her employment by "voluntarily leaving work without good cause" within the meaning of §402(b).

The decision is vacated and the record is remitted to the board for further proceedings consistent with this opinion.