# Kozlowski Unemployment Compensation Case.

84

Argued September 21, 1959.  Before RHODES, P. J.,
HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(GUNTHER, J., absent).

*Stanley M. Greenberg*, with him *Bernard S. Ochman*, for claimant, appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Anne X. Alpern*, Attorney General, for appellee.

*Peter Platten*, with him *Edward G. Bauer, Jr.*, and *Hamilton C. Connor, Jr.*, and *Ballard, Spahr, Andrews & Ingersoll*, for employer, intervening appellee.

OPINION BY WATKINS, J., November 11, 1959:

This is an unemployment compensation case in which the claimant was denied benefits under the provision that "An employe shall be ineligible for compensation for any week—(e) In which his unemployment is due to discharge . . . from work for willful misconduct connected with his work; . . ." Section 402(e) of the Unemployment Compensation Law, 43 PS §802(e).  The Bureau of Employment Security found the claimant ineligible; the Referee reversed the Bu-

reau, allowing benefits; and the Board of Review reversed the referee holding the claimant to be guilty of willful misconduct and so disqualified from receiving benefits.

The board found that Stanley P. Kozlowski, the claimant appellant was last employed by the Philadelphia Transportation Company, Philadelphia, Pennsylvania, the intervening appellee, on August 7, 1958; that he had been employed by the company for 13 years; that during the period from March 27, 1958 to August 4, 1958, the claimant was observed by six different company inspectors, violating fare box regulations on seven occasions; that the violations consisted in making change for passengers for whom no fares were deposited in the box; that it is the duty of an operator to see that a fare is deposited for each passenger and to make sure by visual inspection that the proper amount has been deposited.

There is no question that if the finding that this claimant violated company rules is supported by competent evidence, this appeal is without merit. We held in a similar factual situation that, "The company's rules require that each customer deposit the tokens or money for his fare in the fare box, and prohibits the operators from depositing any such tokens or money in the box for the customer. If the customer does not have the change, he is required to obtain it from the operator and to personally deposit the fare in the box. This company rule is obviously a very important one, and violation of it has been held by this Court to be sufficient cause to discharge an employe for willful misconduct." *Coschi Unemployment Compensation Case,* 186 Pa. Superior Ct. 154, 156, 141 A. 2d 416 (1958).

The issue before this Court is whether there is sufficient legal, competent evidence to support the finding that the claimant violated the rule. The only evidence in the record to support the charge of violations

of the fare box regulations is the written reports, in the form of slips, filed with the employer by the six different spotters, who it is alleged, observed the seven separate violations during the period from March 27, 1958 to August 4, 1958. These slips, as filed with the employer, were permitted to be entered into the record over the objection of the claimant that they were hearsay evidence; that he was denied confrontation by his accusers; and denied the right of cross-examination. These investigators were not shown to be unavailable, in fact, they were available to the employer but the employer contends that their value as spotters is lost once their identity is revealed.

The appellees rest heavily on the authority of the *Coschi Unemployment Compensation Case,* supra, to support their contention that there is sufficient evidence in this record to support the all important finding. However, we would like to point out that similar hearsay testimony, in the form of spotters' slips, was not considered as competent testimony supporting a finding of willful misconduct in the *Coschi* case. Judge WOODSIDE said in his opinion in that case, at page 156, "Although the people who actually witnessed the violation were not called to testify, the claimant's answer to the allegation was in the nature of the ancient plea of confession and avoidance. In his application for unemployment compensation benefits the claimant acknowledged the accusation and answered that nothing was done deliberately, and in his testimony before the referee he said, 'If somebody would give me a token that I could not call back I gave it to the next passenger to put it in'."

Here, however, the claimant denied the accusations on each occasion he was confronted with them; at the time of his discharge and again at the referee's hearing. There was no confession and avoidance but each accusation contained on each slip was categorically

denied by the claimant. In the claimant's statement in his interview before the Bureau of Employment Security he said, "I have never violated any rules on fare procedures. I always did as I was required to do about collecting fares and making change. I was never warned that I was making these violations, which to my knowledge I never did."

There is no doubt that the evidence of these slips is hearsay and that the rights of this claimant were prejudiced by a denial of his right to confront his accusers and cross-examine them. The law is now well settled that findings of fact based on incompetent testimony properly objected to, at the proper time, cannot stand. We have held that the report of an investigator appointed by the board, which contains only hearsay may not be admitted as competent evidence nor may findings of fact be based thereon. *Phillips v. Unemployment Comp. Board,* 152 Pa. Superior Ct. 75, 30 A. 2d 718 (1943). Such a report might have the semblance of impartiality to aid the conclusion of the compensation authorities, but the slips in the instant case are clearly biased, having been made by anonymous agents of the employer. See also: *Glen Alden Coal Company v. Unemployment Compensation Board,* 168 Pa. Superior Ct. 534, 79 A. 2d 796 (1951) and *McAndrew Unemployment Compensation Case,* 178 Pa. Superior Ct. 98, 113 A. 2d 157 (1955).

In this case there was a collective bargaining agreement which set up grievance procedure for its members. Pursuant to this agreement, the claimant after his discharge by the company on August 8, 1958, filed such a grievance through his union representatives. The final phase of this procedure provided for a determination of the charges by a board of arbitrators and it was provided in the agreement that the identity of the spotters would not be revealed to the claimant,

although the chairman of the board of arbitrators might examine the spotters secretly.

However, before reaching this stage of the proceedings, on the advice of his union representative, he discontinued his grievance. It is too clear for argument that, "Whatever the arbitrators found or decided could not rule this case. The arbitrators had no authority from the legislature to decide whether the claimant was guilty, under the law, of willful misconduct so as to be ineligible for unemployment compensation, and the Board of Review had no power to delegate, except to a referee, the duty imposed upon it by law. This is so basic that it is difficult to find cases in which the question has been raised, but it might be noted that, as a general rule even judgments of courts of record in criminal cases are not admissible in civil proceedings founded on the same facts, and vice versa." *Gagliardi Unempl. Compensation Case*, 186 Pa. Superior Ct. 142, 150, 141 A. 2d 410 (1958). So regardless of the decision of the arbitration board, it would have no effect whatever in an action for benefits under the unemployment compensation law.

The appellee, however, admitting this to be the law, contend that this claimant, by the union agreement waived his rights, both before the arbitrators and before the unemployment compensation tribunal to object to the use of the hearsay evidence represented by the spotters' slips. We will readily agree that an agreement between union and management, whereby the union member waives certain basic rights, as between the contracting parties affecting employment, is binding on both parties so that, in this case, a discharge of the claimant could not be contested by the union.

However, a different problem is presented when a claim is filed for unemployment compensation. "The

Unemployment Compensation Law was enacted to alleviate the hardships attendant upon unemployment. Act of December 5, 1936, P. L. 1937, 2897, §3, 43 PS §752; McFarland v. Unemployment Compensation Board of Review, 158 Pa. Superior Ct. 418, 45 A. 2d 423 (1946). It is a remedial statute designed to provide support for workers who are unemployed except for those disqualified by one of the specific provisions of §402. Sturdevant Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 559, 45 A. 2d 898 (1946). In furtherance of this policy, the General Assembly included §701, 43 PS §861, in the law. This provision renders invalid any agreement by an employee to waive or release any of his rights under the act. . . . Where a statute of the Commonwealth expresses a public policy designed to alleviate a condition of possible distress among the public or a segment thereof and explicitly proscribes waiver of the benefits of the act, no private agreement, however valid between the parties, can operate as such a waiver." *Gianfelice Unempl. Comp. Case,* 396 Pa. 545, 552, 554, 153 A. 2d 906 (1959); *Smith Unemployment Compensation Case,* 396 Pa. 557 (1959).

The appellees also contend that the slips are not the only evidence of willful misconduct in this record but that an inference of willful misconduct can be drawn from the resignation of the claimant. There is a lot of confusion in the record in the use of the terms suspension, discharge and resignation. One thing is certain, as of August 8, 1958, the claimant was separated from his work, discharged in the presence of his union representative, and was never permitted to return to it. There is no written resignation and the claimant says that he "technically resigned" so that the charge of pilfering or violation of fare regulations with its connotation of dishonesty would not appear on his record if he sought work elsewhere. Whether

you call it suspension, separation or technical resignation, it is not that sort of resignation, in the face of his continued denial of every allegation of rule violation, from which an adverse inference of an admission might be squeezed.

It is contended, too, that even if there is no proof of willful misconduct to support the board's finding, there is evidence to support a charge that the claimant quit voluntarily within the meaning of Section 402(b) of the Unemployment Compensation Law. In the first place, no such charge was ever made against this claimant so that he might properly answer, and second, the board found specifically that, "claimant's separation cannot be considered voluntary . . .". This finding is amply supported by the evidence. As was said in *Gianfelice Unempl. Compensation Case,* supra, at page 551, ". . . the questions here become simply (1) did Gianfelice cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits." Here, Kozlowski most certainly did not cease working voluntarily and he most certainly was available for work. He had no volition to stay or leave his employment and his so-called "technical resignation" was clearly involuntary and only submitted as a substitute for his discharge as a measure to make it possible for him to continue in the labor market.

Decision of the Unemployment Compensation Board of Review is reversed.