**ANCHOR MOTOR FREIGHT, INC.,**
Employer-Appellant,

v.

**UNEMPLOYMENT INSURANCE APPEAL
BOARD OF the State of DELA-
WARE, Appellee.**

Superior Court of Delaware,
New Castle.

Sept. 3, 1974.

William J. Wier, Jr., Wilmington, and Morgan, Lewis & Bockius, Washington, D.C., of counsel, for employer-appellant.

Stephen R. Spiller, Wilmington, for claimant-appellee.

STIFTEL, President Judge.

This is an appeal from an unemployment compensation award to Kathleen Wilson (hereinafter "claimant") by the Unemployment Insurance Appeal Board. The question before the Appeal Board was whether claimant voluntarily resigned her position or, alternatively, was discharged without just cause. The Board determined that she was "constructively discharged" without just cause. This Court must decide if there is substantial evidence on the record to support the Board's decision. Longobardi v. Unemployment Insurance Appeal Board, 287 A.2d 690 (Del.Super.1971). The applicable statute is 19 Del.C. § 3315, which states in pertinent part:

"An individual shall be disqualified for benefits—

"(1) For the period of unemployment next ensuing after he has left his work voluntarily without good cause attributable to such work . . .

"(2) For the period of unemployment next ensuing after an individual has been discharged from his work for just cause in connection with his work."

The factual findings of the Referee, adopted by the Board, are essentially as follows:

Claimant had been employed by Anchor Motor Freight, Inc. (hereinafter "Anchor") from June 14, 1971, until March 12, 1973, as a dispatch clerk in the administrative offices at Anchor's Wilmington terminal. She worked on the day shift. In January of 1973, claimant was absent from work for two weeks due to illness. When she returned to work, claimant was no longer assigned exclusively to the day shift. She was assigned to rotating shifts. For instance, she would be assigned to work 12 noon to 8:30 for one or two days, 3:00 to 11:30 for two or three days, and so forth. Since she could not obtain a babysitter on such an erratic schedule, claimant found this pattern of working extremely disruptive.

The claimant, who was expecting a child around July 10, 1973, was constantly asked by Anchor officials when she would be leaving. Upon advice of her physician, claimant told her employer that she would be able to work until the end of June. However, the changes in claimant's work schedule prompted her to request a leave of absence as of March 12, 1973. On that date, claimant's supervisor, Mr. Maxwell, who was also her brother, presented her with a letter of resignation previously prepared by Anchor. He told her that if she did not sign the letter, she would not receive her last paycheck or her vacation checks and would be fired as well. He further urged her to sign the letter on the basis that a discharge would blemish her employment record. The claimant reluctantly signed the letter of resignation, having no other alternative.

■ Witnesses for Anchor Motor Freight, Inc. had testified that the claimant was given the option of taking a leave of absence or resigning. They also stated that they were "unaware of" the changes in claimant's shifts. These factual controversies having been resolved by the Board, in favor of the claimant, this Court is bound by those resolutions. General Motors Corp. v. McNemar, 202 A.2d 803 (Del. Supr.1964). It is the duty of the Superior Court, in testing the Board's holdings, merely to ascertain whether substantial evidence exists on the record to support such findings. Longobardi v. Unemployment Insurance Appeal Board, *supra*; Abex Corporation v. Todd, 235 A.2d 271 (Del. Super.1967). Under this standard, questions of credibility and conflicts in the evidence are resolved by the Board. General Motors Corp. v. McNemar, *supra*. Therefore, the only question is whether substantial record evidence exists to support a finding that Mrs. Wilson was discharged without just cause.

■ I find that the record contains substantial evidence to support the Board's decision. Claimant testified in response to at least three questions of the Referee that her brother induced her to sign the letter of resignation on the pretext that she

would be fired and would not receive her checks if she failed to do so (Tr. 8, 11, 12). She testified as to her new irregular work schedule (Tr. 6). Claimant stated that her brother urged her to resign to protect her employment record (Tr. 8). She also said that she trusted her brother and believed him (Tr. 11). The matter of credibility being within the province of the Board, the Board was certainly justified in accepting claimant's version of the facts.

In light of the facts accepted by the Board, claimant's resignation appeared to be involuntary and induced. "Voluntarily", as used in the unemployment compensation statute, has not been defined in Delaware. Webster defines voluntarily as "in a *voluntary* manner." Webster's Third New International Dictionary, p. 2564. In a jurisdiction having an unemployment compensation statute nearly identical to 19 Del.C. § 3315(1) *"voluntary"* has been defined as "proceeding from one's own choice or full consent." Kentucky Unemployment Insurance Commission v. Young, 389 S.W.2d 451, 453 (1965). The resignation submitted by claimant, based on the facts determined by the Board, was not her own free choice or given "with full consent." In adopting the definition of "voluntary," the Court finds that Mrs. Wilson did not leave work voluntarily. Rather, she was induced to resign under pressure. To induce is defined as "to affect, cause, [or] to influence . . . an act or course of conduct." Black's Law Dictionary, 4th ed. p. 915. A resignation induced under pressure is tantamount to a discharge. See Keithley v. Civil Service Board of City of Oakland, 11 Cal.App.3d 443, 89 Cal.Rptr. 809 (1970). Therefore, this Court holds that claimant, who was induced to resign under pressure, by her employer, was discharged without just cause, within the meaning of 19 Del.C. § 3315 (2).

Finally, it must be noted that claimant's testimony was first hand while Anchor's witnesses testified primarily on the basis of hearsay testimony. The trans-

action culminating in claimant's "resignation" involved her and her brother, Mr. Maxwell. It did not involve Mr. Rose or Mr. Newton who were Anchor's witnesses at the hearings. The statements allegedly made by the claimant vis-a-vis a desire to be laid off were allegedly made to Mr. Hoover, Anchor's Terminal Manager, and to Mr. Maxwell, her brother. It is suspect that neither Mr. Maxwell nor Mr. Hoover, who had personal knowledge of the occurrences in question, appeared before the Referee or the Board for questioning. However, Mr. Rose and Mr. Newton, who had no personal knowledge did appear. The Board was therefore justified, on the basis of the record, in finding testimony of Anchor's witnesses unreliable.

Since claimant's testimony *is* probative and supported by substantial evidence in the record, the Court sustains the Board's award.

Decision of the Unemployment Insurance Appeal Board is affirmed.

It is so ordered.