Margaret A. Garvin, Appellant, *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Argued March 6, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Michael A. Nemec,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, March 24, 1975:

In this unemployment compensation case, appellant has been declared to be ineligible to receive benefits under the provisions of Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P. S. §802(b)(1), i.e., voluntarily leaving her position without the requisite necessitous and compelling reason.

This ineligibility has been declared by the Bureau of Employment Security, the referee, and the Board of Review after they had the benefit of a hearing before an appeals referee who took testimony and the Board made its own findings. The Board's findings were substantially the same as the findings of the original referee. We must affirm.

From a review of the entire record, as well as from the very specific resignation hand-written by appellant, there can be absolutely no doubt that appellant resigned. The resignation, in its entirety, follows:

"Mr. Frederick,                    October 12, 1973
    "This is to inform you of my resignation—allowing a two-week period, if you prefer, for notice.

                    "/s/ Margaret Garvin, R.T."

The same letter was addressed to Dr. Kelly. Appellant was an x-ray technician in St. John's General Hospital. Dr. Kelly was Chief Radiologist and Mr. Frederick was the Executive Director.

Very briefly stated, the undisputed facts are that appellant had a history of tardiness. She had been warned that if it happened again, she would be dismissed. She then was told that she had been "accused" of being tardy and leaving early. She denied these accusations but, as she testified, she was concerned that because of

her bad record and not wanting to run the risk of being fired, she wrote the above letter of resignation. The following week, perhaps on Monday or Tuesday, she told both Mr. Frederick and Dr. Kelly that her resignation was to be considered effective only if she was being fired. She was told it was then too late to withdraw the resignation, since a request had been made already for a new employee.

Appellant argues that she did not resign voluntarily. Indeed, the argument seems to be that she did not resign at all, the written resignation quoted above being a mere fiction. It is clear that the only pressure that appellant felt that impelled her to resign was her own desire not to have a firing for tardiness on her record. By no stretch of the imagination can this be considered a proper reason of a necessitous and compelling nature. Two wrongs do not make a right—it is as simple as that. Appellant cannot create a misleading record of employment without tardiness by fabricating a resignation to overcome a false accusation of tardiness. She might have resisted the false charges before her superiors. If, as she testified, she considered this to be a biased forum, having been discharged, she could have had a hearing before an Unemployment Compensation referee where the question of her tardiness could have been resolved in an issue of eligibility under Section 402(e) of the Unemployment Compensation Law, 43 P.S. §802(e), wilful misconduct, as in *Kozlowski Unemployment Compensation Case,* 191 Pa. Superior Ct. 83, 155 A.2d 373 (1959), upon which she relies.

Appellant's reliance on *Kozlowski* is misplaced. In that case, the issue was whether there was competent evidence to support a finding that the applicant had pilfered company funds. He had been declared ineligible because of separation by reason of wilful misconduct. After a six-page opinion dealing with wilful misconduct, Judge WATKINS, now President Judge WATKINS, stated in a last brief paragraph:

"It is contended, too, that even if there is no proof of willful misconduct to support the board's finding, there is evidence to support a charge that the claimant quit voluntarily within the meaning of Section 402 (b) of the Unemployment Compensation Law. In the first place, no such charge was ever made against this claimant so that he might properly answer, and second, the board found specifically that, 'claimant's separation cannot be considered voluntary . . . .' This finding is amply supported by the evidence." *Kozlowski Unemployment Compensation Case,* 191 Pa. Superior Ct. at 90, 155 A.2d at 376.

Obviously, that case is no authority here, for in the instant case it is admitted that appellant resigned and was never discharged. Again, quoting from *Kozlowski,* at page 89, 155 A.2d at 376:

"The appellees also contend that the slips are not the only evidence of willful misconduct in this record but that an inference of willful misconduct can be drawn from the resignation of the claimant. There is a lot of confusion in the record in the use of the terms suspension, discharge and resignation. One thing is certain, as of August 8, 1958, the claimant was separated from his work, discharged in the presence of his union representative, and was never permitted to return to it. There is no written resignation and the claimant says that he 'technically resigned' so that the charge of pilfering or violation of fare regulations with its connotation of dishonesty would not appear on his record if he sought work elsewhere."

Accordingly, we enter the following:

### ORDER

Now, March 24, 1975, the order of the Unemployment Compensation Board of Review, denying the claim of Margaret A. Garvin for unemployment compensation benefits, is hereby affirmed.