Patricia THOMAS, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-
MENT OF LABOR, Respondent.**

No. 13907.

District of Columbia Court of Appeals.

Argued March 7, 1979.
Decided Nov. 13, 1979.

**166**

G. William Scott, III, Neighborhood Legal Services Program, Washington, D. C., for petitioner.

Russell L. Carter, Washington, D. C., with whom D. Kevin Dugan and N. Denise Wilson, Washington, D. C., were on the brief, for respondent.

Before GALLAGHER and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

HARRIS, Associate Judge:

Petitioner challenges a decision by what was then known as the District Unemployment Compensation Board which disqualified her from receiving unemployment benefits for a period of five weeks.[1] The

<hr>

1. Not long before this case reached the court, the District Unemployment Compensation Board became the Bureau of Employment Security of the D.C. Department of Labor. For convenience, however, we refer to respondent as "the Board."

Board had affirmed determinations by both a claims deputy and an appeals examiner that petitioner voluntarily had left her last job without good cause.[2] We reverse and remand the case for further proceedings.

I

Petitioner last was employed as the night switchboard operator at the Veterans Administration Hospital (a federal agency). She held that job from December 1974 until she resigned on December 10, 1977, under the circumstances to be discussed.

A few days later, petitioner applied for unemployment compensation benefits, telling the claims deputy that she had left her employ because of "family problems with my children . . . needed position during day." At the follow-up benefit rights interview, petitioner elaborated on this theme as her reason for resigning. Her former employer subsequently filed the requisite form with the Board; it indicated that petitioner had resigned to seek other employment. On this cursory evidence the claims examiner understandably ruled that petitioner had "voluntarily left available work due to personal reasons. This is not good cause for leaving available work." She accordingly was disqualified from benefits for seven weeks.

Petitioner timely appealed, and a hearing before an appeals examiner was conducted. Though notified of the hearing, no representative of the former employer appeared. The hearing was conducted with only petitioner and her counsel present. Petitioner testified at length concerning her heavy domestic responsibilities which had been depriving her of regular sleep at home, and which caused her to be late for work and to fall asleep on the job on occasions. She testified further concerning certain difficult conditions under which she worked as the hospital's lone night switchboard operator.

Based upon her obviously less than ideal conduct, petitioner had received a few admonitions and a suspension. Upon her request, sometime in late 1977 her weekly schedule was changed so that she no longer worked ten consecutive nights followed by four nights off. However, she apparently became confused by her new schedule and stayed away from work one night when she should have been on duty. Soon thereafter, she heard from a supervisor that disciplinary action was going to be taken against her. She then was called into her supervisor's office and told something to the effect that (1) based on her latest slip-up and her generally spotty prior performance record she could be removed, (2) she should contact her union representative, and (3) she might consider the alternative of resigning in return for the hospital's destroying any record of her poor performance.

The union representative agreed to explore the situation for her. Several days later, he gave her a discouraging report. According to petitioner, her union representative suggested that she resign because there was a proposal to remove her and the personnel department intended to achieve that result. It was his opinion that she could not successfully challenge the proposal to terminate her, and that she should accept their offer to purge her bad record (including the proposal to remove her) in return for her resignation. In the meantime, petitioner was assigned the duty of

**2.** Petitioner thus was considered to be disqualified under D.C.Code 1973, § 46–310, which reads in pertinent part:

(a) An individual who has left his most recent work voluntarily without good cause, as determined by the Board under regulations prescribed by the District of Columbia Council, shall not be eligible for benefits with respect to the week in which such leaving occurred and with respect to not less than four nor more than nine consecutive weeks of unemployment which immediately follow such week, as determined by the Board in such case according to the seriousness of the case. In addition such individual's total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by the weekly benefit amount.

helping to train the woman who apparently had been hired to replace her.

Petitioner decided to agree to her employer's proposal, and gave two weeks' notice of her resignation. On the separation form, her employer had her fill in "to seek employment elsewhere," and the hospital gave this as the reason for separation on the ES–931 form which was filed with the Board following petitioner's initial application for unemployment compensation benefits. Petitioner testified, however, that the "real reason" she resigned was "because I was afraid I was going to get fired from the government. I wanted to keep my status and my career conditional."

The appeals examiner made brief (though accurate) findings of fact, and expressed the following conclusions:

> Claimant voluntarily left her work December 10 and a suitable period of disqualification must therefore be assessed unless her evidence establishes good cause for leaving. What is good cause depends on the facts and circumstances of each case and the action of a reasonable and prudent individual in the labor market. Application of this requirement leads to the conclusion that the evidence does not establish good cause. Claimant's contention that her leaving should be construed as involuntary because of the possibility that separation proceedings would be instituted by the employer is not persuasive because the imminence of such proceedings was not established. Furthermore, if and when they were claimant had the right to challenge them both through her agency and the Civil Service Commission. In view of the extenuating circumstances adduced at the hearing however a minimum period of disqualification appears adequate.

The period of disqualification thus was reduced by the appeals examiner to five weeks. The Board affirmed, and petitioner brought this appeal.[3]

## II

We note preliminarily that although the Board is empowered to issue subpoenas in the discharge of its duties,[4] there is no requirement that the Board issue a subpoena to a party in any given case. In fact, 18 D.C.R.R. § 303.4 (governing the conduct of Board hearings) provides in its subsection (c) that:

> In the event that any party fails to appear at the scheduled time of hearing, the examiner . . . may continue the case to another time or may order the taking of such testimony as is available and proceed with a determination of the appeal on the basis of the record then and there available.

Thus we are not persuaded by the argument that the Board must be overturned ipso facto, either because petitioner's former employer, although properly notified, did not appear, or because the employer was not subpoenaed to appear. We cannot say that the examiner abused his discretion in going forward without the presence of a representative of the hospital. While it is obviously preferable for the employer to be represented at such a hearing, it appears that here the Board could and did discharge its statutory function on the basis of petitioner's testimony and the other available evidence of record.

Further, the appeals examiner correctly did not take as final and conclusive the reason for separation ("to seek other employment") assigned by the employer in the ES–931 form which it filed

---

3. In affirming, the Board acknowledged certain arguments which were made by petitioner, and concluded:

> [Petitioner] discussed the nature of her resignation in relationship to the advice of the union representative and the efforts of her employer to protect her record. It is for the Examiner and the Director to determine a

claimant's eligibility for benefits in unemployment compensation cases by determining the facts and applying the law. It is not for an employee and employers to determine eligibility for benefits by agreement.

4. D.C. Code 1973, §§ 46–313(g)–(i).

with the Board. Such "findings" by federal employers no longer are entitled to be given special weight by the Board,[5] and the examiner properly based his findings on his own inquiry into the matter.

██ We now turn to our review of the Board's conclusion on the merits. Under D.C.Code 1978 Supp., § 46–312, our review of unemployment compensation cases is governed by the District of Columbia Administrative Procedure Act (DCAPA). Specifically, "[f]indings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence."[6] This court may hold unlawful and set aside any action or findings and conclusions found to be unsupported by such evidence in the record.[7] *Hawkins v. Unemployment Compensation Board*, D.C.App., 381 A.2d 619, 622 (1977); *Washington Post Co. v. Unemployment Compensation Board*, D.C.App., 377 A.2d 436, 439 (1977). Inherent in the "substantial evidence" test of the DCAPA are three requirements: (1) that the agency make findings of fact on each contested issue; (2) that each basic finding be supported by evidence sufficient to convince reasonable minds of its adequacy, and (3) that these findings, taken together, rationally lead to the agency's conclusions of law (or "ultimate facts"), thus supporting the agency's decision. *See Citizens Association of Georgetown, Inc. v. Zoning Commission*, D.C.App., 402 A.2d 36, 41–42 (1979); *Kober v. Unemployment Compensation Board*, D.C.App., 384 A.2d 633, 636 (1978).

██ Additionally, we are to defer to an agency's interpretation or construction of a statute which it is charged with administering unless it is "unreasonable either in light of the record or prevailing law." *Billings v. Unemployment Compensation Board*, D.C. App., 367 A.2d 116, 118 (1976), *citing Unem-*

*ployment Compensation Commission v. Aragon*, 329 U.S. 143, 153–54, 67 S.Ct. 245, 91 L.Ed. 136 (1946). While this is true, we are not obliged to stand aside and affirm an administrative determination which reflects a misconception of the relevant law or a faulty application of the law. This court has an overriding decisional responsibility in those realms. *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

██ We conclude that the Board, while affirming the appeals examiner, erred in rejecting, on the unrebutted facts of this case, petitioner's argument that her separation should be construed as a "constructive discharge," and hence that it should be classified as "involuntary" for unemployment compensation purposes. We recognize our limited scope of review over the Board's findings of basic fact. Here, however, there is no dispute on the basic facts. Our problem essentially is with the Board's leap from the basic findings of fact to its ultimate finding of voluntariness—a conclusion with crucial legal significance under the statute. We find unreasonable the way in which the Board has applied the law (D.C. Code 1973, § 46–310, and the implementing Board regulations) to the facts to reach the result it did. We are dealing with a mixed question of fact and law; thus we owe less than total deference to the Board. *See Gordon v. Unemployment Compensation Board*, D.C.App., 402 A.2d 1251, 1258 (1979); cf. *American University Park Citizens Ass'n v. Burka*, D.C.App., 400 A.2d 737, 741 (1979). *See generally,* 3 K. Davis, Administrative Law Treatise, § 30.01 *et seq.* (1958).

It is only with the greatest caution that we delve into this area of the Board's ex-

5. Pub.L.No.94–566, 94th Cong., 2d Sess. § 313, amending 5 U.S.C. § 8506(a) (Supp.1978); *see* H.R.Rep.No.755, 94th Cong., 1st Sess. (1976), at 50, U.S.Code Cong. & Admin.News 1976, p. 5997.

6. D.C.Code 1978 Supp., § 1–1509(e).

7. *Id.*, § 1–1510(3)(E).

pertise. Certainly the Board is better equipped than we to evaluate the countless factual variations on the theme of employment separation which arise, and to draw the necessary distinctions in dispensing unemployment benefits under the statute. Moreover, we would ignore reality if we did not recognize that the "quit or be fired" situation which we face in this case is commonplace—in government employment as well as in the private sector.

▇▇▇▇ It unquestionably is true that an employee reaps a benefit in accepting an employer's offer to "quit" and have a less-than-perfect work record erased. And, of course, we normally think of quitting work as a voluntary action. Thus there is superficial appeal to the notion that a "quit" in such circumstances necessarily is a "voluntary" separation, properly subjecting the claimant to a disqualification of from four to nine weeks of unemployment benefits in the absence of a finding of good cause. However, such a mutually agreed-upon arrangement also operates to the advantage of the employer. An employee who is performing unsatisfactorily can be terminated at once in this way, without the expense and trouble of the hearing(s) to which all government employees and many private sector employees today are entitled, and an employer's payments to the compensation fund generally are related to the claims made by its former employees. In short, given the benefits both sides derive from such an agreement, there is no reason to disfavor the practice. *Cf. Rich v. Mitchell,* 106 U.S.App.D.C. 343, 273 F.2d 78 (1959); *Competello v. Jones,* 105 U.S.App.D.C. 412, 267 F.2d 689 (1959). However, it is not proper to take such a quit, tendered in lieu of termination, out of its context and regard it as dispositive on the issue of voluntariness for unemployment benefits determination purposes. It is immaterial that employers would like to have it so regarded. As the Board pointed out in affirming the appeals examiner's decision in petitioner's case:

It is for the Examiner and the Director to determine a claimant's eligibility for benefits in unemployment compensation cases by determining the facts and applying the law. It is not for an employee and employers to determine eligibility for benefits by agreement.

*Cf. Kozlowski v. Unemployment Compensation Board of Review,* 191 Pa.Super. 83, 155 A.2d 373, 376 (1959).

▇▇▇▇ To properly discharge its function, the Board logically must look to the overriding statutory purpose, which "is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other welfare programs." *Williams v. Unemployment Compensation Board,* D.C. App., 383 A.2d 345, 349 (1978), *quoting Von Stauffenberg v. Unemployment Compensation Board,* D.C.App., 269 A.2d 110, 111 (1970), *aff'd,* 148 U.S.App.D.C. 104, 459 F.2d 1128 (1972); *Gordon v. Unemployment Compensation Board, supra,* 402 A.2d at 1255 n.6. More precisely, the act, like substantially similar statutes in force in every state, was designed to provide income for workers who are unemployed through no fault of their own until they find new work or at least for a statutorily defined period. *Von Stauffenberg v. Unemployment Compensation Board, supra,* 148 U.S.App.D.C. at 107, 459 F.2d at 1131. The D.C. statutory scheme, like that of most states, includes specific criteria for judging whether a claimant is at fault, and thus liable to be temporarily disqualified, including: leaving voluntarily without good cause [D.C.Code 1973, § 46–310(a)]; discharge for misconduct [*id.,* § 46–310(b)]; failing, without good cause, either to apply for or to accept suitable work [*id.,* § 46–310(c)]; and participation in a labor dispute under certain circumstances [*id.,* § 46–310(f)]. *Accord, MEMCO v. Employment Security Administration,* 280 Md. 536, 375 A.2d 1086, 1093–94 (1977); *Allen v. CORE Target City Youth Program,* 275 Md. 69, 338 A.2d 237, 247–48 (1975). Generally, the statute should be

construed liberally, whenever appropriate to accomplish the legislative objective of minimizing the economic burden of unemployment. *See, e. g., Gordon v. Unemployment Compensation Board, supra*, 402 A.2d at 1255 n.6; *Allen v. CORE Target City Youth Program, supra*, 338 A.2d at 241; *Smith v. Employment Security Comm'n*, 212 N.W.2d 471, 472–73 (Iowa 1973); *Schock v. Division of Employment Security*, 89 N.J.Super. 118, 214 A.2d 40, 44 (1965).[8]

### III

Here we review a decision that petitioner left work "voluntarily without good cause, as determined by the Board under regulations prescribed by the District of Columbia Council." *See* D.C.Code 1973, § 46–310(a). We do not reach the issue of good cause, since we decide the case based upon the voluntariness determination. The applicable regulation, 18 D.C.R.R. § 301.1(a), provides in pertinent part:

In determining whether the leaving is such as to disqualify the individual for benefits for the time prescribed, it must appear that the leaving on his part was (1) voluntary in fact, within the ordinary meaning of that term, and (2) without good cause, in the light of all such facts, conditions, and circumstances as are relevant to the particular case. Ordinarily a leaving will be presumed to be *involuntary* on the part of the claimant unless the facts clearly indicate otherwise. . .

For the "ordinary meaning" of the term "voluntary," we might turn to a dictionary, as have other courts faced with interpreting this word in the unemployment benefit context.[9] As we view it, there could be virtually endless debate over whether an employee's act of resigning in the face of a quit-or-be-fired choice is "voluntary" or "involuntary" according to the dictionary definition. The quit-or-be-fired situation straddles whatever fine line exists between the two concepts. We need not become enmeshed in the kind of analysis of causation or free will invited by *Webster's*, however.[10]

---

**8.** Of course, to accomplish the full aim of the legislature there also is a concomitant duty to preserve the fund against claims by those not properly intended to share in its benefits. *Cf. Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 490–91, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). However, payments are a matter of entitlement for those genuinely eligible under the governing statute and regulations. *See Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Hawkins v. Unemployment Compensation Board*, D.C. App., 381 A.2d 619, 623 (1977); *Gary v. Nichols*, 447 F.Supp. 320, 322–23 (D.Idaho 1978).

**9.** *Webster's Third New International Dictionary* (1976), at 2564, defines "voluntary" as "1a: proceeding from the will: produced in or by an act of choice . . . e: acting of oneself: not constrained, impelled, or influenced by another . . . g: acting or done of one's own free will without valuable consideration; acting or done without any present legal obligation to do the thing done or any such obligation that can accrue from the existing state of affairs . . . VOLUNTARY implies freedom from any compulsion that could constrain one's choice. . . ." *See also, e. g., Allen v. CORE Target City Youth Program, supra*, 338 A.2d at 242–43; *Anchor Motor Freight, Inc. v. Unemployment Insurance Appeal Board*, 325 A.2d 374, 376 (Del.Super.1974); *Keithley v.*

*Civil Service Board*, 11 Cal.App.3d 443, 89 Cal. Rptr. 809, 814–15 (1970); *Unemployment Insurance Commission v. Young*, 389 S.W.2d 451, 453 (Ky.1965); *Biley Electric Co. v. Unemployment Compensation Board of Review*, 158 Pa. Super. 548, 45 A.2d 898, 903 (1946). *See also* Kempfer, *Disqualifications for Voluntary Leaving and Misconduct*, 55 Yale L.J. 147, 154 (1945).

**10.** One commentator has observed:

Unemployment compensation is limited to "involuntary" unemployment because public opinion would not support the payment of benefits as a matter of right to persons "voluntarily" unemployed. But public opinion is not concerned with metaphysical theories of causation or free will. People are shocked at the payment of benefits only when the conduct which led to the claimant's unemployment was unreasonable, that is, when the claimant was "at fault." Most people would object to payment of compensation to individuals who have arbitrarily quit work or who have deliberately disobeyed reasonable working rules of the employer. [Kempfer, *supra*, at 150.]

*See also* Packard, *Unemployment Without Fault: Disqualifications for Unemployment Insurance Benefits*, 17 Vill.L.Rev. 635, 638–39 (1972).

Rather, we look to determinations by other courts that an employee's quitting pursuant to a quit-or-be-fired choice is not per se "voluntary" for unemployment compensation eligibility purposes. *See Anchor Motor Freight, Inc. v. Unemployment Insurance Appeal Board*, 325 A.2d 374 (Del.Super. 1974); *Kozlowski v. Unemployment Compensation Board of Review, supra*, 155 A.2d at 376–77. *See also Rizzitano v. Unemployment Compensation Board of Review*, 32 Pa.Cmwlth. 59, 377 A.2d 1060 (1977); *Keithley v. Civil Service Board*, 11 Cal. App.3d 443, 89 Cal.Rptr. 809, 812–13 (1970).[11]

Indeed, the Board itself has recognized that such a resignation is not automatically "voluntary"—that it may in fact be involuntary. Appeals Examiner's Decision No. 6705, decided October 7, 1954, reversed a temporary disqualification for a voluntary leaving without good cause, holding:

> It appears from all the evidence that the claimant was working on a temporary appointment as a laborer for the National Park Service. He was given the option of resigning or being laid off for unsatisfactory service. He resigned so as to keep his Civil Service record in good order, but a resignation in this manner is not a voluntary quit as contemplated by [the statute] and the disqualification, therefore, should not prevail.

More recently, Appeals Examiner's Decision No. 35,795 UCEF, decided November 29, 1976, reversed on the same grounds a claims deputy's temporary disqualification of a former secretary at the Department of Ag-being informed that she would be terminated for absenteeism while in a probationary period of employment. The examiner found that: "Claimant did not want to leave her job, and only resigned in lieu of termination, so as to have a better employment record. She knew she had no right, as a probationary employee, to appeal from a termination." He concluded:

> The claimant's resignation from her last employment was not voluntary, but only in lieu of termination. An involuntary separation gives rise to a disqualification from unemployment benefits only if it is a discharge for misconduct. Here, claimant's separation was due to excessive absenteeism. Excessive absenteeism can be misconduct if it occurs intentionally or in reckless disregard of the employer's interests and employee's duties. . . .

The examiner in that case went on to hold that misconduct had not been proved, and reinstated full benefits.

Considering the Board's disposition of the case at bar together with its handling of those just cited, we discern that while the Board is willing to regard a resignation in the face of a quit-or-be-fired ultimatum as potentially involuntary, it will not do so where the employee foregoes the right to a termination hearing in choosing to quit. (It is not clear that the temporary laborer for the Park Service, the claimant in No. 6705, *supra*, had the right to a hearing.)

If the Board in fact focuses on the imminence of a threatened termination when evaluating the claim of a worker who quit in a purported quit-or-be-fired situation, it is approaching the voluntariness inquiry reasonably.[12] Many courts have looked to

---

11. The ordinary meaning of a discharge is a severance of the employment relation by the employer. However, where a worker has quit in anticipation of certain discharge . . , it is more reasonable to consider the termination of employment a discharge than a voluntary quit. The worker would then be disqualified only if the elements of the disqualification for misconduct are present [Kempfer, *supra*, 55 Yale L.J. at 161 (footnotes omitted).]

12. We note, however, the following conclusion reached in Appeals Examiner's Decision No. 38,601 UCFE, October 14, 1977, later affirmed by the Board.
> [T]he examiner finds that the claimant resigned in lieu of being discharged for absenteeism. Resigning in lieu of discharge is not good cause to quit for the purpose of benefits.
This analysis, avoiding, as it does, the threshold voluntariness inquiry, is unacceptable in light

the actual imminence of a feared discharge in deciding whether a separation from employment was voluntary or involuntary. This question arises regularly in variations of the prototypical case in which an employer, perturbed at an employee's unsatisfactory performance, tells that employee to "shape up or ship out." Courts uniformly have held that a worker's leaving in the face of such a threat (where the employer has offered solid evidence that what was communicated was merely a warning, and not an imminent firing) is voluntary; a reasonable worker in that position should remain on the job (as the employer anticipates he would) and try to improve his performance. *Rizzitano v. Unemployment Compensation Board of Review, supra; Garvin v. Unemployment Compensation Board of Review*, 18 Pa.Cmwlth. 96, 334 A.2d 854 (1975); *Manjares v. Unemployment Compensation Board of Review*, 15 Pa.Cmwlth. 317, 325 A.2d 644 (1974); *La Greca v. Catherwood*, 30 A.D.2d 597, 290 N.Y.S.2d 26 (1968); *MacDevitt v. Glover*, 29 A.D.2d 588, 285 N.Y.S.2d 338 (1967); *Employment Security Board v. Poorbaugh*, 195 Md. 197, 72 A.2d 753, 754 (1950). *See also Unemployment Compensation Board of Review v. Van Travis*, 24 Pa.Cmwlth. 180, 354 A.2d 9, 11 (1976); *Frost v. Levine*, 52 A.D.2d 998, 383 N.Y.S.2d 446 (1976). *See generally* cases collected at 1A CCH Unemployment Compensation Laws Reporter ¶ 1975.13. This jurisdiction's regulatory presumption that a leaving is "*involuntary on the part of the claimant unless the facts clearly indicate otherwise*," 18 D.C.R.R. § 301.1(a), would allow the same result as long as there were facts demonstrating the employee merely had been warned—and not been told he would be fired.

Further, with the focus still on imminence of discharge, given certain facts it may be reasonable for the Board to conclude that an employee who quits in the face of a quit-or-be-fired offer—thereby giving up a right to a termination hearing—has left work voluntarily. Such might be the case—again bearing in mind the presumption of involuntariness—where, for example, there is clear evidence that the employer was not really serious, or that the employer's reason for seeking the employee's discharge lacked legitimacy and the employee reasonably ought to have stayed on and utilized the hearing tool.

On the record before us, however, we can find no support for the Board's finding of a lack of imminence and thus its ultimate conclusion of voluntariness. Again, the Board took the facts to be essentially as petitioner—who alone testified at the hearing—asserted them to be. Mrs. Thomas testified that after being threatened with discharge and offered the quit-or-be-fired alternative, she was aware of her hearing right; that she (at the employer's suggestion) sought her union representative's advice and was advised by the latter to resign because there was an active proposal to remove her which she would not be able to resist successfully;[13] and that in the days before her resignation she had been given the task of training a new switchboard operator who apparently was to be her replacement. On these facts, it was unreasonable for the Board to reach the conclusion which it did.

In so holding, we are not improperly substituting our judgment for the Board's. We simply cannot ignore the fact that the only evidence in the record tends to support—not rebut—the applicable presumption of involuntariness. The employer did not appear at the hearing to introduce any contrary evidence; the Board had only the standard form which the hospital had submitted containing the notation that petitioner had left to seek other employment. In light of the facts developed at the hear-

---

of the statutory-regulatory scheme and of the Board's own prior recognition of the proper analysis in this area.

13. The record includes an affidavit by petitioner's union representative which supports petitioner's testimony.

ing, that bit of evidence properly was disregarded. Petitioner did not have the burden of proving involuntariness; her testimony, however, tended in that direction. The employer, on the other hand, offered no facts to overcome the presumption of involuntariness. Indeed, it appears that the existence of the right to a hearing is the only fact pointing toward voluntariness. In context this does not amount to reliable, probative, and substantial evidence supporting the finding of no imminence and thus the conclusion of voluntariness. *Cf. General Railway Signal Co. v. Unemployment Compensation Board*, D.C.App., 354 A.2d 529, 532–33 (1976); *Woodward & Lothrop, Inc. v. Unemployment Compensation Board*, 129 U.S.App.D.C. 155, 159, 392 F.2d 479, 483 (1968). By simply equating the existence of a hearing right with a lack of imminence (and therefore, ipso facto, with voluntariness), at best the Board appears to have substituted an easy rule of thumb for its responsibility under the law to determine voluntariness in each case on the basis of a consideration of all the facts. To the extent that the Board has adopted a per se rule that whenever an employee foregoes the right to a hearing, his resignation pursuant to a quit-or-be-fired offer will be deemed voluntary, with the relevant inquiry then becoming one of good cause, it is in error. The Board may not in that way shortcut its obligation to apply the appropriate regulations and find reliable, probative, and substantial evidence of voluntariness before turning to the good cause issue. The Board's apparent practice undoubtedly operates to save money for the contributors to the fund. Preservation of the assets of the fund is, of course, crucial, but it is a goal to be pursued only consistently with the purpose of the statute, and not at the expense of denying benefits to persons otherwise entitled to receive them.

Again, we normally defer to an agency's interpretation and application of the statutes it is charged with administering. We may not, however, abdicate our responsibility in these matters. Here, we find impermissibly strained the Board's finding of a lack of imminence of discharge leading to its ultimate conclusion that on the facts of this case the statutory classification of voluntariness is appropriate.

We emphasize that we do not hold that the opposite is true—that the existence of a hearing right is, as a matter of law, irrelevant to the determination of voluntariness. It may well be a factor, but it may not be taken as conclusive. Here, there was other substantial evidence of record tending to show that the separation was involuntary. The presumption of involuntariness cannot be said to have been overcome, under any reasonable reading of the facts and the law. Petitioner's separation was involuntary—tantamount to a discharge—and so we remand the case to the Board for appropriate action consistent with this opinion.[14]

*Reversed and remanded for further proceedings consistent with this opinion.*

---

**14.** Finally, while we hold that a resignation under some circumstances should be characterized for unemployment compensation purposes as an involuntary separation, thereby making the possible existence of disqualifying misconduct the relevant inquiry, we express no opinion on the line of cases discussing the some-

what related doctrine of "constructive voluntary leaving" or "provoked discharge". *See Allen v. CORE Target City Youth Program, supra*, 338 A.2d at 244–48; *James v. Levine*, 34 N.Y.2d 491, 358 N.Y.S.2d 411, 315 N.E.2d 471 (1974); *Granholm v. Levine*, 50 A.D.2d 621, 374 N.Y.S.2d 736 (1975).