**CHIMES DISTRICT OF COLUMBIA, INC., Petitioner,**

v.

**Patricia O. KING, Respondent.**

**No. 06–AA–1003.**

District of Columbia Court of Appeals.

July 30, 2009.

BEFORE: WASHINGTON*, Chief Judge; RUIZ, REID, GLICKMAN, KRAMER, FISHER*, BLACKBURNE–RIGSBY, THOMPSON, and OBERLY, Associate Judges; KING*, Senior Judge.

ORDER

PER CURIAM:

On consideration of respondent's petition for rehearing or rehearing en banc, and petitioner's consent motion for leave to file the lodged response, it is

ORDERED that the motion is granted and the Clerk is directed to file the lodged response to the petition. It is

FURTHER ORDERED by the merits division * that the petition for rehearing is denied; and it appearing that the majority of the judges of this court has voted to deny the petition for rehearing en banc, it is

FURTHER ORDERED that the petition for rehearing en banc is denied.

Senior Judge KING would grant the petition for rehearing.

Associate Judges RUIZ, KRAMER, and OBERLY would grant rehearing en banc.

OBERLY, Associate Judge, dissenting, with whom RUIZ and KRAMER, Associate Judges, join:

I write separately to explain why I dissent from the denial of rehearing en banc.

Patricia King, a hearing-impaired janitorial worker, voluntarily quit her job in the eighth month of a high-risk pregnancy that had already caused her to exhaust her entire 16 weeks of statutory Family Medical Leave, pursuant to a medically-approved absence, by the sixth month of her pregnancy. The Office of Administrative Hearings affirmed a claims examiner's award to King of unemployment benefits pursuant to D.C.Code. § 51–110(a) (2006), finding that she left her job "for good cause connected with the work." *Id.* A majority of a panel of this court reversed the award of benefits, holding that King's employer could not have known that her decision to quit her job in the eighth month had anything to do with complications of her pregnancy because King did not provide her employer with a *second* medical statement from her doctor sufficient to give the employer notice that her work gave her cause for resigning her job. The court has strayed too far from the requirement that the statute be "construed broadly to accomplish the legislative and statutory intent of minimizing the economic burden of unemployment." *Chimes District of Columbia, Inc. v. King,* 966 A.2d 865, 871 (D.C.2009) (King, Senior Judge, dissenting) (citing *Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 171 (D.C.1979)).

Our court has previously recognized, in *Bublis v. District of Columbia Dep't of Employment Services,* 575 A.2d 301 (D.C. 1990), that a worker who quits her job voluntarily because of illness or disability caused or aggravated by her work does not lose her entitlement to unemployment benefits simply because the "medical state-

ment" she provides her employer does not meet requirements of code pleading. Rather, it is sufficient if the employer is provided enough information "to require it to assume the duty of inquiring further" into the circumstances of the employee's condition. *Id.* at 304. As we said in *Bublis,* the requirement for "medical documentation" is a "potential snare for the unwary employee, and for that reason basic fairness dictates that *at some point* the party assumed to have greater knowledge of the regulatory scheme must bear the responsibility of confirming the nature and cause of the illness." *Id.* (emphasis in original). The ALJ did no more than hold that that point had been reached in this case.

This is not simply a fact-bound question on which reasonable persons could disagree, and hence unworthy of en banc review. Rather, the conflict between the result reached by the panel majority in this case and the burden-shifting rule established in *Bublis* casts a cloud of uncertainty over the proper resolution of unemployment compensation claims that will befuddle employers and employees alike, not to mention the cadre of Claims Examiners and ALJs who must apply our court's decisions to the many cases they must decide each year, often under time pressures dictated by the exigent circumstances confronting those who find themselves facing the harsh reality of unemployment. On the facts of this case, the panel's plenary review contravenes the long-established rule that our court reviews the administrative decision below applying the highly deferential "substantial evidence" standard. 966 A.2d at 868.

There were ample facts in this case to permit the ALJ reasonably to conclude that the employee presented sufficient evidence to trigger *Bublis'* burden-shifting rule. Prior to the termination of her employment, King was a custodian whose job required prolonged standing, walking, bending, lifting and stooping. Several weeks into her pregnancy, King developed complications and was classified as a "high-risk" patient. Based on her obstetrician's advice, King provided the necessary medical documentation to her supervisor to support her request for medical leave. Her employer evaluated her request under its Family Medical Leave policy; that policy not only provided the statutorily required 16 weeks of unpaid leave but also authorized additional discretionary leave of up to 12 additional weeks in the event of an employee's own serious health condition. Thus, King was eligible for a medical leave of up to 28 weeks.

Upon receiving King's request for medical leave, including the information submitted by her obstetrician, her employer determined that she was entitled to medical leave because of her own "serious health condition" and advised her that she had been approved for a 16–week medical leave. Before the expiration of her 16–week leave, King's obstetrician sent the employer a letter detailing accommodations to be made to King's work duties upon her return:

> Patricia King is under my obstetrical care. Some modifications of her duties should be made to improve her obstetrical outcome. Please limit her duties to lifting no more th[a]n 10 pounds. She should also refrain from climbing more than two flights of stairs, pulling and pushing any heavy objects.

Upon receipt of this letter, King's supervisor advised King that she might be unable to return to work consistent with her physician's medical restrictions and told her to await her doctor's release for her return to regular work duties on or before the end of her scheduled leave expiration date. Shortly thereafter, King submitted a "return to work" certification completed by her physician that stated: "Ms. King can lift up to 30 pounds on occasion. She

can occasionally climb more than 2 flights of stairs. She will be unable to work entirely for 6–8 weeks following delivery."

King then returned to work for approximately two months under the restrictions imposed by her physician, which were acceptable to her employer. During her eighth month of pregnancy (approximately six weeks before she delivered her baby), she advised her supervisor that she needed to take a second medical leave because of pregnancy-related complications, including back problems and dizziness.[1] King believed that her supervisor assured her that taking a second medical leave would not be a problem and that her job would be held for her. The supervisor denied making any such representations. Again (*see* n. 1, *supra*), the issue is not who said what but, rather, as the ALJ recognized, whether enough was said to put the employer on notice that it needed to make further inquiry.

Regardless, King began what she thought was a second medical leave only to receive a termination letter from her employer three days later. The letter advised that she had used all of the Family Medical Leave to which she was entitled and made no mention of the company's discretionary policy of granting up to 12 weeks of additional leave in cases of "serious health conditions."

At the hearing on King's claim for unemployment benefits, her employer never contended that it lacked sufficient medical information to determine whether she quit because the complications of her pregnancy gave her good cause connected with her work. Rather, the employer's representative said King was terminated because she

had exhausted the 16 weeks of statutory leave to which she was entitled and that her position therefore had to be "closed." In the absence of even the slightest indication that the employer needed more medical information to determine how to address King's request for a second medical leave, there should be no requirement that King had to "provide a new statement from her doctor to establish that her reasons for leaving were connected with her work as required by the regulations." 966 A.2d at 870. In the context of a complicated, high-risk pregnancy in which the claimant's obstetrician cleared her for return to work in the sixth month only on the understanding that she "can lift up to 30 pounds *on occasion*" and she can "*occasionally climb more than 2 flights of stairs*" (emphasis added), the employer had no need for a *second* note from King's physician to establish why she quit in the eighth month.

There is good reason for *Bublis's* burden-shifting rule, as the facts of this case demonstrate. Not only did King's employer never contend that it lacked information necessary to decide whether to offer an accommodation or pay unemployment benefits, but it is not clear that King ever understood the employer's leave policies clearly enough to request some or all of the discretionary 12 weeks of additional leave available under the company's policies. Indeed, King, who testified at the hearing on her claim for unemployment compensation through a sign-language interpreter, told the claims examiner that she had repeatedly requested an interpreter to explain the company's policies because she could not understand them. Unless the full court addresses this case *en banc*, the employer stands to receive a

---

1. Although there is a dispute in the record as to whether King said she "needed" to take a second medical leave or whether she said she "wanted" to stop working for the remainder of her pregnancy, the discrepancy does not change the issue in this case. Rather, it

merely highlights the fact that, under *Bublis*, King gave her employer sufficient notice of her circumstances, supported by medical documentation, to place the burden on the employer of making further inquiry.

windfall for its decision to terminate King without considering whether she should be granted some or all of the additional 12 weeks of discretionary medical leave available under company policy. Surely these circumstances are sufficient to place the burden on "the party assumed to have greater knowledge of the regulatory scheme" to confirm "the nature and cause of the illness and the prospect it holds out for resumption of work," *Bublis*, 575 A.2d at 304.[2] Because litigants and administrators alike need guidance from this court on this critical question, I would grant the petition for rehearing en banc.

---

**2.** The panel majority tries to distinguish *Bublis* by writing that here, "King's doctor had cleared her to return to work after initially asking that she be excused from work because of complications related to her pregnancy." 966 A.2d at 870. In contrast, the panel writes, Bublis's doctor "never cleared her to return to work." *Id.* It bears repeating, however, that King's doctor only cleared her to return to work with restrictions—lifting "up to 30 pounds *on occasion*" and "*occasionally climb[ing] more than 2 flights of stairs.*" Even that limited clearance came only after King's employer had deferred her return to work pending receipt of a letter from King's doctor clarifying the accommodations required by her pregnancy. These medical restrictions scarcely could have caused King's employer to believe that all issues arising out of King's pregnancy had ended when she returned to work in the sixth month.