# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CATHRYN BYRD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N15A-03-002 DCS |
| | ) | |
| VISION CENTER OF DELAWARE and | ) | |
| UNEMPLOYMENT INSURANCE | ) | |
| APPEAL BOARD, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: October 1, 2015
Decided: December 16, 2015

*On Appeal from the Decision of the Unemployment Insurance Appeal Board –*
**AFFIRMED.**

# OPINION

Cathryn Byrd, *Pro Se* Appellant.

Scott E. Chambers, Esquire and Shae Chasanov, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, Attorneys for Appellee Vision Center of Delaware.

Paige Schmittinger, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for Appellee the Unemployment Insurance Appeal Board.

**STREETT, J.**

**Introduction**

Appellant Cathryn Byrd ("Appellant") has appealed the February 20, 2015 decision of the Unemployment Insurance Appeal Board (the "Board"). The Board determined that Appellant was discharged from her work for just cause and, as a result, was disqualified from receiving unemployment benefits under 19 *Del. C.* § 3314(2). The Board found that Appellant's former employer, Vision Center of Delaware, (the "Employer"), established that Appellant had been discharged for insubordination because Appellant willfully refused to complete reasonable duties that the Employer assigned to her.

On appeal, Appellant contends that she "do[es] not believe that [she] was insubordinate while working" for the Employer and that she "had no previous warnings" prior to her discharge.[1]

For the reasons set forth below, the Board's decision is affirmed.

**Factual Background**

Appellant was employed full-time as an optician by the Employer from June 23, 2014 until her discharge for insubordination on September 10, 2014.

The record shows that Appellant signed a "Contract of Employment Non-Professional Employee" prior to commencing employment, which provided that:

> [a]ll employee's [sic] will be placed on a 90 day initial
> training and orientation period. This is a probationary

---

[1] Appellant's Opening Br. at 1 & 3.

period and dismissal may occur at any time during this period with no claim against the employer.[2]

The "Contract of Employment Non-Professional Employee" also provided that:

[a]n employee may be terminated at any time for any material misrepresentation or deliberate omission of a material fact in the application or interview, theft, fraud, insubordination, dishonesty, willful misconduct, harassment of any fellow employee or patient or any pattern of discriminatory behavior or rudeness to patients or co-worker.[3]

Additionally, the "Contract of Employment Non-Professional Employee" outlines progressive disciplinary measures for any "breach of office policies":

First Offense: Verbal warning and documentation in personnel file.

Second Offense: Written warning and documentation in personnel file.

Third Offense: Termination of employment.[4]

The record also shows that when Appellant was hired, her duties included answering the Employer's telephone and assisting the Employer's patients with selecting frames at the frame board. Appellant was not initially required to answer the telephone while she learned the Employer's computer system, however the Employer's Office Manager, Allison Brittingham ("Ms. Brittingham"), instructed

---

[2] Record at 102 (hereinafter "R. at _____").

[3] *Id.*

[4] R. at 101.

Appellant to begin to answer the Employer's telephone beginning the last week of July 2014, approximately one month after she was hired.

On September 2, 2014, the Employer's receptionist, who was already involved in a telephone conversation, asked Appellant to answer another line of the Employer's telephone system. Appellant, who was not assisting a patient at that time, refused to answer the telephone.

On September 3, 2014, Ms. Brittingham gave Appellant a verbal warning about her refusal to answer the telephone and instructed her again to answer the telephone.

On September 9, 2014, Appellant would not get up from her desk to assist a patient at the frame board. Instead, Dr. Amy Farrall ("Dr. Farrall"), the owner of Vision Center of Delaware, had to assist the patient.

That same evening, Dr. Farrall and Ms. Brittingham, Appellant's superiors, met with Appellant concerning her job performance, including Appellant's refusal to answer the telephone and to assist the patient at the frame board. During the meeting, Appellant told them that she felt that she was doing her job and that she was not going to change (i.e., perform certain duties as assigned). Dr. Farrall verbally warned Appellant that she would be terminated if she continued to refuse to perform some of her assigned duties. Appellant became "aggressive" and "threatened" Dr. Farrall, so Dr. Farrall asked Appellant to leave.

4

The following morning (September 10, 2014), Appellant failed to report for work. Ms. Brittingham contacted Appellant via text to inquire whether Appellant had quit. Appellant responded that she thought she had been fired. Ms. Brittingham replied that the Employer had not fired Appellant and Appellant stated that she would come in to the office.

Appellant arrived at work two hours later (at approximately 12:20 p.m.). Ms. Brittingham told Appellant that she and Dr. Farrall needed to speak to Appellant after Dr. Farrall was finished with her patients. While Ms. Brittingham and Appellant waited for Dr. Farrall to become available for the meeting, Ms. Brittingham instructed Appellant to perform her job duties. Appellant again refused to answer the telephone.

The September 10, 2014 meeting started between 12:45 and 1:00 p.m. Appellant again told her superiors that she was not going to change (i.e., perform certain duties as assigned). Dr. Farrall presented Appellant with a final written warning, dated September 10, 2014. The final written warning provided, in part, that:

> [a]n urgency to perform employee[']s 3 month probationary evaluation has come a week earlier than scheduled. Because job duties have not been performed to employer[']s expectations employee is being placed on a new probationary period, starting September 17, 2014 and ending on December 17, 2014.

> Sales have not reached expected growth. Employee has not familiarized herself with product information, including whole sale cost of product that has in turn lowered our profit margin drastically. There has been no willingness to perform general office duties. Or willingness to interact with staff on a consistent basis . . .[5]

The final written warning specified that general office duties included answering the telephone.[6] The document further provided that "[t]he employee will perform the duties of an optician and general office staff" and that "if performance has not improved there will be consequences which could include . . . possible termination."[7]

Appellant refused to sign the final written warning and told Dr. Farrall that she was leaving for a meeting. Although Appellant only worked an hour and fifteen minutes that day and was not entitled to take a break, Appellant left the meeting at 1:45 p.m. and returned to work late at 2:45 p.m. Thereafter, Dr. Farrall terminated Appellant for refusing to perform certain tasks and for insubordination during Appellant's 90-day probationary period.

---

[5] R. at 99.

[6] *Id.*

[7] R. at 99 – 100.

## Procedural History

Appellant filed a claim for unemployment insurance benefits on September 14, 2014.[8] The following day (September 15, 2014), Appellant completed the Delaware Department of Labor's (the "DOL") "Claimant Fact-Finding Issue: Discharge" form.[9] Appellant reported that she was terminated from her position with the Employer because she "wasn't performing job duties."

On September 23, 2014, Ms. Brittingham faxed a "Separation Notice" and "Employer Fact-Finding Statement: Discharge" form to the DOL on behalf of the Employer.[10] On the Separation Notice, Ms. Brittingham indicated that Appellant had been "Fired/Discharged." On the Employer's Fact-Finding Statement form, Ms. Brittingham put an "X" in the box adjacent to "Misconduct – including but not limited to attendance, insubordination, or violation of company policies/procedures." In addition, Ms. Brittingham submitted a three-page narrative detailing the events that led to Appellant's termination, a copy of Dr. Farrell's notes, "copies of invoices/notes that were not completed to company standards, employee warning on 9/3/14, employee write up on 09/10/2014, employee contract, [and Appellant's] fax[ed] sheet with hours."[11]

---

[8] R. at 38.

[9] R. at 5 – 6.

[10] R. at 7 & 38.

[11] R. at 8 – 10.

On October 3, 2014, the Claims Deputy issued a Notice of Determination that Appellant was disqualified from receiving unemployment benefits under 19 *Del. C.* § 3314(2).[12] The Claims Deputy found that Appellant had been discharged for insubordination after the Employer met with Appellant twice because "she was not doing her duties as required" and that Appellant "stated she did not intend to change."[13] The Claims Deputy concluded that the Employer met its burden of proving that Appellant had been discharged for just cause.[14]

On October 10, 2014, Appellant appealed the Claims Deputy's determination.[15] Appellant wrote that she "disagree[d] with the determination," but she did not specify the basis for her appeal.[16]

A hearing before the Appeals Referee was held on November 7, 2014. The Appeals Referee heard testimony from Ms. Brittingham, the Employer's representative, and Appellant, who was represented by an attorney.

Ms. Brittingham testified that on September 2, 2014, Appellant told "the receptionist that she would not answer phones," so Ms. Brittingham spoke to Appellant about answering telephone calls and told Appellant "she needed to do

---

[12] R. at 40 – 43.

[13] R. at 40.

[14] R. at 41.

[15] R. at 44 – 46.

[16] R. at 45.

that."[17]  Ms. Brittingham further testified that Dr. Farrall and Ms. Brittingham met with Appellant after the office closed on September 9, 2014 and "presented [Appellant] with issues [they] had with her performance," including that she did not always greet patients, answer the phone, document information in the Employer's office program, and assist patients with selecting glasses.[18]  Ms. Brittingham stated that the meeting "didn't end well" and "Dr. Farrall ended up asking [Appellant] to leave the office."[19]

Ms. Brittingham testified that the following day (September 10, 2014), Appellant "refuse[d]" to answer the telephone, fax information to the optical lab, and enter information into the Employer's system.[20]  Ms. Brittingham further testified that Dr. Farrall and Ms. Brittingham met with Appellant from 12:45 or 1:00 p.m. until 1:45 p.m.[21]  According to Ms. Brittingham, Appellant said that "she was unwilling to [answer the telephone]," that "she did not feel like she needed to make any changes," that she "was unwilling to multitask," and that she "felt she was doing fine and she wouldn't make any changes."[22]  Ms. Brittingham testified

---

[17] R. at 74 & 78.

[18] R. at 56 & 58.

[19] R. at 56.

[20] R. at 79.

[21] R. at 56 & 68.

[22] R. at 60 – 61, 63 – 64.

that Dr. Farrall terminated Appellant from her position that same day (September 10, 2014) because Appellant was unwilling to change.[23]

Appellant testified that, in August 2014, she "brought to [Dr. Farrall's] attention that [she] was having trouble working there" after an incident involving her minor son.[24] Appellant was unable to "recall" occasions when Ms. Brittingham and another employee had to assist patients at the frame board while Appellant sat at her desk.[25] However, Appellant acknowledged that while Appellant "was putting an order in the computer," Dr. Farrall "approached [a] patient [at the frame board] before [Appellant]."[26] Appellant also testified that she told Dr. Farrall and Ms. Brittingham she "would not [answer the telephone] if [she] was with a customer or a patient."[27]

On November 20, 2014, the Appeals Referee issued a written decision and reversed the Claims Deputy's determination.[28] The Appeals Referee found that although Appellant "was asked to make several changes regarding her work habits," the Employer "did not provide any proof" in support of its contention that

---

[23] R. at 55.

[24] R. at 84.

[25] R. at 86 – 87.

[26] R. at 85 – 86.

[27] R. at 82.

[28] R. at 91 – 95.

10

Appellant refused to make changes and, as such, there was "insufficient evidence to reach the conclusion that [Appellant] acted willfully or wantonly."[29]

On December 3, 2014, the Employer appealed the Appeals Referee's decision.[30]

On January 14, 2015, the Board held a hearing.[31] Dr. Farrall, Ms. Brittingham, and Denise Reed (the Employer's "front desk and lab tech") testified on the Employer's behalf. Appellant, who was again represented by an attorney, also testified at the hearing.

Dr. Farrall testified that she "had some issues with [Appellant's] performance" during the 90-day "trial period" outlined in Appellant's employment contract.[32] Dr. Farrall maintained that Appellant refused the "simple order" to "answer the phones."[33] Dr. Farrall testified that she "witnessed [Appellant] refusing to answer the phone," however she was unable to recall the exact date.[34]

Dr. Farrall testified that she warned Appellant about her refusal to perform certain duties prior to her discharge.[35] According to Dr. Farrall, Ms. Brittingham

---

[29] R. at 92 – 93.

[30] R. at 104 – 05.

[31] R. at 107.

[32] R. at 111.

[33] R. at 127.

[34] R. at 128.

[35] R. at 114.

gave Appellant a verbal warning on September 3, 2014, Ms. Brittingham "wrote up" the verbal warning, Dr. Farrall and Ms. Brittingham "tried to talk to" Appellant on September 9, 2014, Appellant "got very aggressive and threatened [Dr. Farrall]" when Dr. Farrall "tried to" warn Appellant that she would be terminated if she did not change, and Dr. Farrall told Appellant to "get out."[36]

Dr. Farrall further testified that Appellant received a final written warning the next day (September 10, 2014).[37] Dr. Farrall stated that Appellant came into work at 12:18 p.m. and met with Dr. Farrall after Dr. Farrall "finished patients."[38] Dr. Farrall testified that Appellant refused to sign the final written warning that Dr. Farrall gave her during the meeting.[39] At 1:45 p.m., someone came to Dr. Farrall's office and "said they had a meeting with [Appellant] and said that they were representing her."[40] Appellant "told [Dr. Farrall] I have a meeting I'm leaving" even though Appellant "wasn't entitled to a break" (because Appellant "worked an hour and a quarter that day").[41]

---

[36] R. at 115 & 116.

[37] R. at 117 & 118.

[38] R. at 119.

[39] R. at 117.

[40] R. at 119.

[41] R. at 118 & 120.

Dr. Farrall stated that Appellant was terminated "after she . . . returned late" from the "break which she was not entitled to."[42] Dr. Farrall terminated Appellant for "willfully not wanting to change her performance and insubordination."[43] According to Dr. Farrall, Appellant was insubordinate to her (Dr. Farrall) because Appellant "open endedly threatened" her and Appellant "said that she would not [do several things in her job description]."[44] Dr. Farrall testified that Appellant "said she wasn't going to answer the phones, she wasn't going to multi-task and input the information from the computer and talk to the patients at the same time."[45] Dr. Farrall also testified that she warned Appellant before Appellant was terminated and Appellant "said I would not, if I were you I would not fire me. Are you firing me, because I wouldn't do that. And [Dr. Farrall] said to her, what are you talking about? Why are you saying that? And [Appellant] said, I'm just telling you I wouldn't do it."[46]

Dr. Farrall noted that the employment contract that Appellant signed provided that "dismissal may occur at any time during the [probational 90-day] period" and that the "employee may be terminated for several reasons," including

---

[42] R. at 118.

[43] R. at 111 & 113

[44] R. at 113.

[45] R. at 127.

[46] R. at 114.

"insubordination" and "willful misconduct."[47] Dr. Farrall testified that Appellant was terminated within the 90-day probation period.[48]

Ms. Brittingham testified that Appellant "was hired as an office member to assist patients with frame selections."[49] The Employer has "a small staff" that consists of a receptionist, a technician, and an optician who "all work out on the same floor."[50] Appellant's duties included "answering phone calls, greeting patients, checking in patients, [and] pulling authorizations."[51] Ms. Brittingham confirmed that Appellant was aware of her duties when she accepted the position because Ms. Brittingham and Appellant "talked about [Appellant's duties and the Employer's expectations of her] at the sit down before she was hired."[52] Ms. Brittingham stated that Appellant was familiar with all of the duties except "submitting insurance claims," which Ms. Brittingham "would go over . . . with her."[53] Ms. Brittingham gave Appellant the employment contract, "told her she

---

[47] R. at 112.

[48] Id.

[49] R. at 133.

[50] Id.

[51] Id.

[52] R. at 133 & 135.

[53] R. at 134.

14

could take it home and review it," and Appellant "handed back the contract" on her first day.[54]

Ms. Brittingham also testified about the circumstances that led to Appellant's termination. Ms. Brittingham stated that the Employer was not initially concerned about Appellant answering the telephones because Appellant had to learn the computer system and that the Employer expected Appellant to "start answering phones" during the last week of July 2014.[55] Appellant did not answer the Employer's telephone and "the other staff members" went to Ms. Brittingham and informed her that Appellant was "really not helping out as much as [they] needed her to[]."[56] Both Ms. Brittingham and Dr. Farrall "addressed" Appellant.[57] Ms. Brittingham testified that Appellant did not start to answer the telephone.[58] Ms. Brittingham represented that on September 2, 2014, the "receptionist was on the phone and the phones were ringing. She asked [Appellant] if she would answer the phone and she blatantly said no."[59] Appellant "was not with a patient."[60]

---

[54] R. at 135.

[55] R. at 134.

[56] Id.

[57] Id.

[58] Id.

[59] R. at 136 & 137.

[60] R. at 137.

Ms. Brittingham testified that on September 9, 2014, Appellant "would not get up and help a patient at a frame board," which was one of Appellant's duties, so "Dr. Farrall had to help" the patient.[61] Ms. Brittingham further testified that she and Dr. Farrall met with Appellant that evening (September 9, 2014) about Appellant "answering phones, working with patients at [the] frame board, helping out the office staff," Appellant "told" them that "she didn't feel like she needed to make changes" and that "she felt she was doing her job," Dr. Farrall and Ms. Brittingham "said to her but we are your bosses and we're asking you to do simple tasks in the office," and Appellant "refused" and said "she wasn't going to."[62] Ms. Brittingham also testified that she asked Appellant "if you're not going to do the things that we're asking you to do, then why do you think you can keep a position here," Appellant asked if she was being fired and said "I don't think you want to do that," Ms. Brittingham said "[w]e're just asking you to answer phones, to help with patients at the frame boards," and Appellant "said that she wasn't going to make the changes."[63]

Ms. Brittingham testified that when Appellant did not come into work the next morning (September 10, 2014), she sent Appellant a text message and asked if Appellant had quit. Appellant "said no" and called Ms. Brittingham at 10:20 a.m.

[61] R. at 131 & 136.

[62] R. at 130 – 31.

[63] R. at 131.

16

to say that she was coming in to work.[64]  According to Ms. Brittingham, Appellant came to work two hours later.[65]  Ms. Brittingham told Appellant that she and Dr. Farrall "needed to sit down and have a meeting" and to "perform [her] duties" until Dr. Farrall "was done with patients."[66]

Ms. Brittingham further testified that during the September 10, 2014 meeting, she and Dr. Farrall "presented [Appellant] with a write up more or less telling her that because you're not willing to do these certain things were going to have to cut your pay" because "we're going to have to give raises to the other staff so they can complete the tasks or we're going to have to hire somebody else.[67] Appellant "refused again in front [of] another staff member that she wasn't going to make the changes" and "refused" to sign the write up.[68]  Appellant "said she was going to make a copy and she was going to present it to her lawyer," she left, and she returned to work late "at quarter to 3:00."[69]  Ms. Brittingham testified that she, Dr. Farrall, Ms. Reed, and Appellant were present when Dr. Farrall terminated Appellant "for insubordination, for refusing to do simple tasks in the office."[70]

---

[64] R. at 131 – 32.

[65] R. at 132.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] R. at 133.

17

Ms. Reed testified that Appellant "didn't complete all her job duties" and "refused to do some things with her job duties."[71] Ms. Reed "felt that [Appellant] wasn't able to do mostly [all] of her job duties," so she spoke with her supervisor (Ms. Brittingham) about that.[72] She testified that Appellant "[r]efused to answer the phones . . . because she felt that that was not part of her job."[73] Ms. Reed claimed that Appellant "would go to the back where we have all the glasses, she would hide back there for long amounts of time . . . not to make anything and it was awkward."[74] Ms. Reed confirmed that she was present when Appellant was terminated.[75]

Appellant acknowledged that she met with Dr. Farrall and Ms. Brittingham on September 9, 2014, they "did not feel that [she] was performing [her] job," and she "disagreed" with them.[76] Appellant also acknowledged that she refused to sign Ms. Brittingham's "write up" at the September 10, 2014 meeting because she "didn't agree with [her] pay cut for what [she] was doing."[77] Appellant testified

---

[71] R. at 138.

[72] *Id.*

[73] R. at 139.

[74] R. at 140.

[75] R. at 138.

[76] R. at 141 – 42; 146.

[77] R. at 143.

that she "never refused to answer the phone."[78] She explained that she "told them that the only time is if [she] was working with a patient selling glasses" and that "the time that they asked [her] to answer the phone [she] was actually in the middle of an eyeglass repair."[79] Appellant testified that she "never refused to answer anything if [she was] not doing something" and that she would answer the telephone "if she was not busy."[80]

On February 20, 2015, the Board issued a written decision that reversed the Appeals Referee's decision.[81] The Board found that the testimony from the Employer's representative (Dr. Farrall) and two witnesses (Ms. Brittingham and Ms. Reed) "regarding [Appellant's] insubordination to be credible," that Appellant "willfully refused to complete reasonable duties assigned to her," and that the "Employer has demonstrated sufficient just cause to discharge the [Appellant] for insubordination."[82] The Board concluded that Appellant was disqualified from receiving unemployment benefits pursuant to 19 *Del. C.* § 3314(2).

Appellant timely appealed the Board's decision on March 2, 2015, asserting that the witnesses gave "false information" and that "Sandra Cross to be a

---

[78] R. at 141.

[79] *Id.*

[80] R. at 141 & 143.

[81] R. at 148 – 54.

[82] R. at 150.

19

witness."[83] Appellant attached documents to her Opening Brief and Reply Brief that were not submitted as part of the record below.[84] Because the Court's review is limited to the record that was before the Board, the Court cannot consider evidence that was not included as part of the record below.[85]

## Parties' Contentions

On appeal, Appellant disputes the Board's finding that she was insubordinate. Appellant maintains that all of her "work related problems" began in August 2014 after she alleged an incident had occurred involving her minor child and another employee's children and she felt the Employer "was trying to finds [sic] ways to get [her] to quit or fire [her]."[86] Appellant asserts that she did not receive any complaints or written warnings concerning her work prior to her discharge.

The Employer contends that the Board's decision is supported by substantial evidence and is free from legal error. The Employer asserts that the record shows

---

[83] R. at 158.

[84] Appellant submitted seven documents on appeal to the Court that she did not submit before the Appeals Referee or the Board: (1) Summary of Emergency Department Visit, dated August 11, 2014, (2) "Usage Details" for two cell phones, (3) Appellant's résumé, (4) a list of counselors, dated August 18, 2014, (5) an undated "Statement of Sandra L. Cross," which was sworn before a notary on June 29 (the year is unknown), (6) August and September 2014 calendars with handwritten notes, and (7) a "Quick Reference Guide" from Santinelli International, dated August 20, 2013.

[85] *Scott v. Unemployment Ins. Appeal Bd.*, 1993 WL 390365, at *2 (Del. Super. Sept. 22, 1993) (citing *Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del. 1976)).

[86] Appellant's Opening Br. at 2.

20

that Appellant was discharged for just cause because she "displayed a flagrant disregard for her job duties and her supervisor."[87]

In a letter to the Court, the Board informed the Court that it does not take a position on the merit of its decision. The Board maintains that the matter was decided on the merits, Appellant's contentions concern the merit of its decision, and the Board "has no cognizable interest in seeking to have its rulings sustained."[88]

### Standard of Review

On appeal from a Board decision, the Court's review is limited to determining whether the Board's factual findings are supported by substantial evidence in the record and the decision is free from legal error.[89] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[90] The Court does not weigh evidence, determine questions of credibility, or make findings of fact.[91] Questions of law are reviewed *de novo*.[92]

---

[87] Appellee's Answering Br. at 8 & 9.

[88] Ltr. to the Court from Paige J. Schmittinger, Esquire, Deputy Attorney General at ¶ 2 (internal quotation marks omitted) (quoting *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 261 (Del. 1983)).

[89] 19 *Del. C.* § 3323(a) ("In any judicial proceeding under [§ 3323], the findings of the Unemployment Insurance Appeal Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law"). *See also Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 309 – 10 (Del. 1975).

[90] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).

[91] *Anchor Motor Freight, Inc. v. Unemployment Ins. Appeal Bd.*, 325 A.2d 374, 375 (Del. Super. 1975).

[92] *State v. Reynolds*, 669 A.2d 90, 92 (Del. 1995). *See also Potter v. Del. Dep't of Corr.*, 2013 WL 6035723, at *2 (Del. Nov. 13, 2013).

Absent an abuse of discretion, a Board decision that is without legal error and is supported by substantial evidence will be affirmed.[93]

## Discussion

Under 19 *Del. C.* § 3314(2), an employee is disqualified from receiving unemployment benefits if she is discharged from her work for just cause in connection with her work.[94] The employer has the burden of proving, by a preponderance of the evidence, that the employee was discharged for just cause.[95]

Just cause "is defined as a wilful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[96] Willful conduct "implies actual specific[] or evil intent" whereas wanton conduct "is that which is heedless, malicious, or reckless, but is not done with actual intent to cause harm."[97] Just cause is not "mere inefficiency, unsatisfactory conduct, or failure of performance as a result of inability or incapacity, inadvertence in isolated instances or good faith errors of

---

[93] *Filanowski v. Port Contractors, Inc.*, 2007 WL 2229019, at *1 (Del. Aug. 2, 2007).

[94] 19 *Del. C.* § 3314(2). *See also Murphy & Landon, P.A. v. Pernic*, 121 A.3d at 1222; *Little v. True Pack, Ltd.*, 2014 WL 5025354, at *2 (Del. Super. Sept. 24, 2014).

[95] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d at 1222.

[96] *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986). *See also Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265, 1267 (Del. 1981); *Tuttle v. Mellon Bank of Del.*, 659 A.2d 786, 789 (Del. Super. 1995).

[97] *Roshon v. Appoquinimink Sch. Dist.*, 2010 WL 3855179, at *2 (Del. Oct. 4, 2010) (internal quotation marks omitted) (quoting *Tuttle v. Mellon Bank of Del.*, 659 A.2d at 789)).

22

judgment."[98]   If the record contains substantial evidence from which the Board "'could infer that an employee's substandard performance [wa]s the result of a willful act in violation of the employer's interests rather than conduct which . . . appears to be merely inadvertent or inefficient, a denial of [unemployment insurance] benefits is most appropriate.'"[99]

In the instant case, the Board determined that Appellant was disqualified from receiving unemployment benefits under 19 *Del. C.* § 3314(2).  The Board found that the Employer met its burden of proving that Appellant had been discharged for just cause based on insubordination for willfully refusing to complete reasonable duties that were assigned to her.

Just cause for discharge may be found if an employee is insubordinate.[100] Insubordination includes an employee's refusal to perform a reasonable task that is assigned by the employer.[101]   This is so because an employer has just cause to discharge an employee for insubordination under Delaware law if the employee

---

[98] *Starkey v. Unemployment Ins. Appeal Bd.*, 340 A.2d 165, 166 – 67 (Del. Super. 1975)).  *See also Lensfest Grp. v. Jeffers*, 2000 WL 33114323, at *2 (Del. Super. Aug. 14, 2000).

[99] *Majaya v. Sojourners' Place*, 2003 WL 21350542, at *5 (Del. Super. June 6, 2003) (quoting *Starkey v. Unemployment Ins. Appeal Bd.*, 340 A.2d at 167.

[100] *Krouse v. Cape Henlopen Sch. Dist.*, 1997 WL 817846, at *3 (Del. Super. Oct. 28, 2007).

[101] *Henry v. Mountaire Farms of Del., Inc.*, 2015 WL 4475812, at *1 (Del. Super. July 22, 2015); *Bugaj v. L & D Suzuki, Inc.*, 2014 WL 2884477, at *2 (Del. Super. June 19, 2014) (holding an employee's refusal to follow his general manager's reasonable instruction to change a fuel pump constituted just cause for the employee's discharge).

23

willfully refuses to follow her employer's reasonable instructions or directions.[102]

Moreover, a "single instance of insubordination may support just cause for termination."[103]

Here, the record shows that Appellant was discharged for her repeated refusal to perform certain duties that the Employer assigned to her when her employment commenced (i.e., to answer the Employer's telephone and to assist patients with frame selections at the frame board).

On September 2, 2014, Appellant refused to answer the Employer's ringing telephone, even though answering the telephone was among Appellant's assigned duties and the Employer's Office Manager (Ms. Brittingham) had instructed her to begin answering the telephone at the end of July 2014. The Board noted Appellant's testimony and version of events (that she never refused to answer the telephone and that she thought she might have been repairing glasses at the time). However, the Board credited testimony from Dr. Farrall and Ms. Brittingham that Appellant refused to answer the telephone on that date. The Board also credited Ms. Reed's testimony that Appellant was not doing anything when Appellant

---

[102] *Little v. True Pack, Ltd.*, 2014 WL 5025354, at *2 (Discharge of employment due to insubordination constitutes just cause if the employee wilfully refuses to follow the reasonable instruction of the employer"); *Scott v. Unemployment Ins. Appeal Bd.*, 1993 WL 390365, at n. 3 (defining insubordination as "[r]efusal to obey some order which a superior officer is entitled to give and have obeyed").

[103] *Bugaj v. L & D Suzuki, Inc.*, 2014 WL 2884477 at *2.

refused to answer the telephone, which corroborated Ms. Brittingham's testimony that Appellant was not assisting a patient at the time.

In addition, the Board was aware of and considered Appellant's testimony before the Appeals Referee that she was unable to recall occasions when Ms. Brittingham and another employee had to assist patients at the frame board while Appellant sat at her desk. However, the Board credited Ms. Brittingham's testimony that Appellant "would not get up" to assist a patient at the frame board on September 9, 2014.

Because Appellant was a member of a "small staff" and she worked on the same floor as the other two employees, Appellant's duties to answer the telephone and assist patients at the frame board are not unreasonable. Moreover, the record shows that Appellant's refusal to perform these reasonable duties was not merely inadvertent or attributable to any inefficiency on Appellant's part. Indeed, Appellant was aware of these duties when she commenced her employment. Appellant discussed her duties, including her duty to answer the Employer's telephone and assist the Employer's patients at the frame board, with the Employer's Office Manager (Ms. Brittingham) when Appellant was hired.

Additionally, the record shows that Appellant told her superiors twice that she was not going to change, despite their warnings.

Appellant also testified as to her refusal to perform these duties. She acknowledged that she refused to answer the telephone, despite the Employer's request, because she was in the middle of repairing eyeglasses. So too, Appellant acknowledged that Dr. Farrall had to assist a patient at the frame board because Appellant was entering an order in the computer. However, the Board credited Ms. Reed's testimony that Appellant would hide in the back "for long amounts of time." Thus, the record supports the Board's finding that Appellant willfully refused to perform certain duties that had been assigned to her.

Furthermore, Appellant had notice that insubordination could result in her termination. Appellant signed the "Contract of Employment Non-Professional Employee," which provides that insubordination and/or willful misconduct could lead to her termination and that dismissal could occur at any time during her 90-day probationary period.

In addition, the Employer gave Appellant verbal and written warnings that her refusal to perform certain reasonable, assigned tasks could result in her termination. The Board credited Dr. Farrall's testimony that during the September 9, 2014 meeting, Appellant verbally refused to make any changes to her job performance and then became aggressive and directed verbal threats to Dr. Farrall when Dr. Farrall verbally warned Appellant that her refusal to perform certain assigned duties could result in her termination.

26

The Board also credited Dr. Farrall's testimony that during the September 10, 2014 meeting Appellant once again verbally refused to change, refused to sign the written warning concerning her "[un]willingness to perform general office duties," told Dr. Farrall she was leaving for a meeting, left the meeting to take a break that she was not entitled to take, and returned from that break late.

Although Appellant contends that she was not insubordinate, despite the Employer's repeated warnings to answer the telephone and assist patients at the frame board and Appellant's continued refusal to perform these duties, it is within the purview of the Board to assess the credibility of witnesses, determine the weight to be accorded to their testimony, and draw all reasonable inferences therefrom.[104]

The record supports the Board's finding that Appellant was discharged for insubordination for willfully refusing to perform reasonable duties that the Employer had assigned.[105]   As such, the Board's decision that Appellant is disqualified from receiving unemployment benefits under 19 *Del. C.* § 3314(2) is supported by substantial evidence and is free from legal error.

---

[104] *Mietus v. Unemployment Ins. Appeal Bd.*, 1995 WL 562165, at *2 (Del. Super. Aug. 24, 1995).

[105] Appellant contends that her "work related problems" began after she alleged an incident had occurred involving her minor child and another employee's children.
    Appellant's attorney questioned Dr. Farrall about the alleged incident during her testimony before the Board, the Board's Chairman asked Appellant's attorney whether "any type of police report" had been filed, and Appellant did not present any verification of the incident to the Board.  Appellant's attorney stated that he "did not feel that it was appropriate that [he] go to the police now," however he maintained that Appellant "did complain to the police" and that "as far as [he knew, the Attorney General's Office was] still reviewing it."  Thereafter, the Board declined to hear further testimony about the alleged, unverified incident.  The Board's Chairman stated, "The board is not going to listen to that today."  R. at 123 – 24.

## Conclusion

In determining that Appellant is disqualified from receiving unemployment benefits, the Board reviewed the testimonial and documentary evidence presented to the Appeals Referee, the Appeals Referee's decision, the Employer's notice of appeal, and the testimony before the Board which shows that Appellant refused to answer the Employer's telephone and to assist patients at the frame board during her 90-day probationary period. Appellant was aware of such duties at the time she commenced employment and acknowledged occasions when she did not perform those duties. Despite the Employer's verbal and written warnings about her refusal to perform those duties, Appellant refused to change. Thus, there is substantial evidence in the record to support the Board's finding that Appellant was insubordinate for willfully refusing to complete reasonable duties assigned to her.

Moreover, Appellant signed an employment contract that notified her that insubordination was grounds for termination and that she could be dismissed at any time during the probationary period. Additionally, prior to Appellant's termination, the Employer gave verbal and written warnings that her refusal to complete reasonable duties assigned to her could result in her termination. Consequently, Appellant's contention that she did not receive any complaints or written warnings concerning her work prior to her discharge is without merit.

28

**ACCORDINGLY**, the Board's decision that Appellant is disqualified from receiving unemployment benefits under 19 *Del. C.* § 3314(2) is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

                                                         _____

                                                         Diane Clarke Streett
                                                         Judge

Original to Prothonotary

cc:    Cathryn Byrd, *Pro Se* Appellant (via Regular Mail)
       Scott E. Chambers, Esquire (via File & ServeXpress)
       Shae Chasanov, Esquire (via File & ServeXpress)
       Paige Schmittinger, Esquire, Deputy Attorney General (via File & ServeXpress)